IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| EVET VAUGHN, | HON. JEROME B. SIMANDLE |
| Plaintiff, | Civil No. 06-1254 (JBS) |
| v. | **OPINION** |
| BALLY'S PARK PLACE, INC., d/b/a BALLY'S ATLANTIC CITY, <u>et al.</u>, | |
| Defendants. | |

APPEARANCES:

Louis P. McFadden, Jr., Esquire
2106 New Road, Suite F-4
Linwood, NJ 08221
    Attorney for Plaintiff

Russell L. Lichtenstein, Esquire
Eileen Oakes Muskett, Esquire
COOPER LEVENSON APRIL NIEDELMAN & WAGENHEIM, P.A.
1125 Atlantic Avenue, 3d Floor
Atlantic City, NJ 08401
    Attorneys for Defendant Bally's Park Place Entertainment

**SIMANDLE**, District Judge:

    The federal Family and Medical Leave Act grants eligible employees up to twelve weeks of medical leave in a year without losing their jobs.  In this case, Plaintiff Evet Vaughn ("Plaintiff") alleges that her former employer, Bally's Park Place d/b/a Bally's Atlantic City ("Bally's" or "Defendant") violated her rights under the Family and Medical Leave Act, 29 U.S.C. § 2601, ("FMLA"), when she was discharged after taking two

hours of medical leave at the end of her casino shift.  Plaintiff alleges two types of FMLA violations in Count I of the Complaint: that Defendant (1) interfered with rights she was entitled to under the FMLA (the "interference" claim) and (2) retaliated against her for the time she requested and took off work (the "retaliation" claim).  Count II alleges wrongful termination in violation of the New Jersey Law Against Discrimination, N.J. Stat. Ann. § 10:5-12(d) ("NJLAD").  Plaintiff demands reinstatement, lost compensation, damages, and attorney fees as a remedy.

Presently before the Court is Defendant's motion for summary judgment pursuant to Fed. R. Civ. P. 56 [Docket Item No. 10], which asserts Plaintiff's use of FMLA leave was fraudulent and thus there was a legitimate business reason for terminating her employment.  The Court will deny the motion as to both Count I and II because genuine issues of material fact exist surrounding Plaintiff's intended purpose for taking leave, and consequently, her claims under the FMLA and the NJLAD.

I. **BACKGROUND**

   Plaintiff Evet Vaughn, a 46-year-old resident of Egg Harbor Township, was hired by Bally's Park Place in 1981.  (Def.'s Statement of Mat. Facts ¶ 1; Pl.'s Ex. A, Pl.'s Dep. ¶ 1.)  She had never been reprimanded or disciplined by the casino prior to the incident at issue in this case.  (Pl.'s Statement of Add.

Mat. Facts ¶ 2.)  At the time of her dismissal, Plaintiff was employed as a full-time "dual rate supervisor" for Bally's, working the day shift in the positions of dealer and floorperson in the gaming area.  (Id. at ¶ 4.)

Plaintiff asserts that in early 2005, she began to suffer increased pain from the inflammation of a heart condition that was diagnosed at age 16.  (Pl.'s Ex. F, Pl.'s Dep. at 16, 28.)  The heart murmur is a "chronic mitral valve regurgitation," which Plaintiff said caused severe daily chest pain as blood flows backward through her heart valves.  (Id. at 16.)  She testified that she treats the chest pain with medication, but occasionally, and without warning, suffers the onset of excruciating pain.  (Id. at 17.)

At the suggestion of her doctor, Dr. Lawrence Anastasi, Plaintiff said she applied for intermittent leave under the FMLA in March 2005.  (Id. at 28; Def.'s Statement of Mat. Facts, ¶ 4.)  Defendant Bally's approved the intermittent leave from April 22, 2005 through October 1, 2005.  (Def.'s Statement of Mat. Facts, ¶ 5.)  Plaintiff utilized that leave to depart early from shifts on April 30, May 8, May 29, June 12, and June 25, 2005 because of chest pains.  (Id. at ¶¶ 16-21.)

Also in March 2005, Plaintiff began working a second job at the Borgata Hotel Casino & Spa (the "Borgata") in Atlantic City.  (Id. at ¶ 6.)  She worked as a part-time dealer on the sunrise,

3

or graveyard, shift overnight at the Borgata after completing her work on the day shift at Bally's.  (Id. at ¶ 11.)  On the occasions when her schedule at Bally's and the Borgata overlapped, Plaintiff said she would switch her start times with other employees.  (Id. at ¶ 14.)

The date of the incident at issue in this case is July 6, 2005.  (Id. at ¶ 22.)  Plaintiff was working as a floor person at Bally's, and advised her supervisor at about 5:30 p.m. that she was suffering from chest pain.  (Id.)  When she went on break at about 5:45 p.m., she went to the nurse's station and obtained a medical pass, which she submitted to the casino's scheduling office.  (Id. at ¶¶ 23-25.)  Plaintiff testified that she was picked up by her boyfriend, who took her home to take her heart medication and an hour-long nap, just before 6 p.m.  (Id. at ¶¶ 26-28.)

Plaintiff had an 8 p.m. shift that evening at the Borgata, and asserts that she would have lost her job had she called out sick because she was still in her probation period at the casino. (Id. at ¶ 30.)  She said her illness relapsed later that evening after working three and a half hours at the Borgata, and she was transported to the Atlantic City Medical Center via ambulance. (Pl.'s Br. at 8, ¶ 5.)  She was treated overnight for complaints of chest pain and released the next morning.  (Pl.'s Ex. E, Pl.'s Medical Records.)

Plaintiff had been observed dealing blackjack at approximately 8 p.m. by Michael May, Vice President of Table Games for the Defendant, who was visiting the Borgata with his 85-year-old mother.  (Def.'s Ex. J, Affidavit of Michael May.)  May attested that he asked the floor manager at Borgata when Plaintiff started her shift, and later inquired about Plaintiff's schedule at Bally's that day.  (Id.)  He concluded that she would not have had time to complete her full shift, which would have ended at 7:40 p.m., and make it to the Borgata to work by 8 p.m. (Id.)

When Plaintiff arrived to work at Bally's on July 9, she testified that her supervisor told her she was suspended pending investigation because she had been seen elsewhere after she left Bally's on medical leave July 6.  (Def.'s Statement of Mat. Facts, ¶ 31.)  She was terminated July 11, 2005.  (Id. at ¶ 32.) Defendant told her she was fired because the casino believed she had fraudulently utilized her FMLA leave to permit her to work a second job.  (Id. at ¶ 33.)  Plaintiff appealed that decision at a Bally's Board of Appeal hearing on August 12, 2005, but the board affirmed the casino's decision to terminate her employment. (Pl.'s Ex. D, letter from Board of Appeal.)

Plaintiff filed this Complaint against Defendant on March 17, 2006.  [Docket Item No. 1].  After limited discovery, Defendant filed the instant motion for summary judgment on May

5

21, 2007.  [Docket Item No. 10].  Plaintiff filed opposition to Defendant's motion on June 15, 2007 [Docket Item No. 14], to which Defendant replied on June 26, 2007 [Docket Item No. 16].  The Court considered all of the parties' submissions and did not hear oral argument on this motion.  See Fed. R. Civ. P. 78.

## II. SUMMARY JUDGMENT STANDARD OF REVIEW

Defendant moved for summary judgment as to Counts I and II pursuant to Rule 56, Fed. R. Civ. P.  A court may grant summary judgment when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see Lang v. New York Life Ins. Co., 721 F.2d 118, 119 (3d Cir. 1983).  A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law.  See id.  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.  Id.[1]

---

[1] Moreover, a non-moving party must do more than rely only "upon bare assertions, conclusory allegations or suspicions." Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985), cert. denied, 474 U.S. 1010 (1985) (citation omitted); see Liberty Lobby, 477 U.S. at 249-50.  Thus, if the non-moving party's evidence is a mere scintilla or is "not significantly probative," the court may grant summary judgment.  Liberty Lobby, 477 U.S. at 249-50; Country Floors v. P'ship Composed of Gepner and Ford, 930 F.2d 1056, 1061-62 (3d Cir. 1991).

6

On Defendant's motion for summary judgment, the Court must view the evidence in the light most favorable to Plaintiff. Yet the non-moving party must come forward with some admissible evidence: "Although entitled to the benefit of all justifiable inferences from the evidence, the nonmoving party may not, in the face of a showing of a lack of genuine issue, withstand summary judgment by resting on mere allegations or denials in the pleadings; rather, that party must set forth 'specific facts showing that there is a genuine issue for trial.'" United States v. 717 S. Woodward St., 2 F.3d 529, 533 (3d Cir. 1993) (quoting Fed. R. Civ. P. 56(e)).

## III. DISCUSSION

### A. Claims Under the FMLA (Count I)

The FMLA was enacted to provide leave for workers whose personal or medical circumstances necessitate that they take time off from work in excess of what their employers are willing or able to provide. See 29 U.S.C. § 2601, et seq.; see also Victorelli v. Shadyside Hosp., 128 F.3d 184, 186 (3d Cir. 1997) (citing 29 C.F.R. § 825.101).[2] Employees who take FMLA leave are

---

[2] The Act is intended "to balance the demands of the workplace with the needs of families . . . by establishing a minimum labor standard for leave" that lets employees "take reasonable leave for medical reasons, for the birth or adoption of a child, and for the care of a child, spouse or parent who has a serious health condition." Churchill v. Star Enters., 183 F.3d 184, 192 (3d Cir. 1999) (quoting 29 U.S.C. § 2601(b)(1), (2)).

entitled to certain protections.  See 29 U.S.C. § 2614.  For example, an employee's leave cannot be denied, his or her health benefits must be maintained and, upon return from leave, he or she must be restored to the same, or an equivalent position.  See id.  To protect these rights, employers are prohibited from engaging in certain prohibited acts.  See 29 U.S.C. § 2614.  First, § 2615(a)(1) makes it unlawful for "any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" under the FMLA.  Id. at § 2615(a)(1)(a so-called "interference" claim).  Second, § 2615(b) makes it unlawful for "any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful" under the FMLA.  Id. at § 2615(b)(a so-called "retaliation" claim).  The Court will deny Defendant's motion for summary judgment as to both FMLA claims.

---

In furtherance of these objectives, the FMLA requires that an eligible employee receive twelve workweeks of leave under certain circumstances.  See 29 U.S.C. § 2612.  These include the onset of a "serious health condition that makes the employee unable to perform the functions of the position of such employee."  Id. at § 2612(a)(1)(D).  A "serious health condition" is "an illness, injury, impairment, or physical or mental condition" that involves "(A) inpatient care in a hospital or (B) continuing treatment by a health care provider."  Id. at § 2611(11).  When "an eligible employee needs to take FMLA leave that was not foreseeable, 'the employee need not expressly assert rights under the FMLA or even mention the FMLA; rather the employee need only notify the employer that leave is needed.'" Conoshenti v. PSE&G Co., 364 F.3d 135, 141 (3d Cir. 2004)(quoting 29 C.F.R. § 825.303(b)(2005)).

### 1. Plaintiff's Interference Claim

Interference claims are "based on the prescriptive sections of the FMLA which create substantive rights for eligible employees." Parker v. Hahnemann Univ. Hosp., 234 F. Supp. 2d 478, 485 (D.N.J. 2002) (citing Hodgens v. Gen. Dynamics Corp., 144 F.3d 151, 159 (1st Cir. 1998)). An interference claim is "not about discrimination" and therefore, a burden-shifting analysis is not required. Callison v. City of Phila., No. 03-3008, 2004 U.S. Dist. LEXIS 6770, at *11 (E.D. Pa. 2004 March 31, 2004). Rather, "these prescriptive rights 'set floors for employer conduct.'" Parker, 234 F. Supp. 2d at 485 (quoting Hodgens, 144 F.3d at 159.)

The Department of Labor has promulgated regulations regarding interference claims, stating that "any violation of the [FMLA] or of these regulations constitute interfering with, restraining, or denying the exercise of rights provided by the [FMLA]." 29 C.F.R. § 825.220(b). "Interference" includes "[a]ny violations of the Act or of these regulations." Id. To prevail on an FMLA interference claim, the employee merely needs to show she was entitled to benefits under the FMLA and that she was denied them. Parker, 234 F. Supp. at 485. She does not need to show that the employer treated other employees more or less favorably, and the employer cannot excuse its action by offering a legitimate business reason as justification. Id. (citing

Hodgens, 144 F.3d at 159). This action is merely about whether the employer provided its employee the entitlements and protections guaranteed by the FMLA. Id.

In this case, Defendant does not dispute that Plaintiff was eligible for medical leave under the FMLA. Defendant's Statement of Material Facts includes a stipulation that Plaintiff "applied for and was approved for intermittent leave under the [FMLA] from April 22, 2005 through October 1, 2005." (Def.'s Statement of Mat. Facts ¶ 5.) Defendant also cites five other occasions - April 30, May 8, May 29, June 12, and June 25 - in which Plaintiff utilized her FMLA leave exactly as she did on the date of the incident, departing in the middle of a shift because she complained of chest pains. (Id. at ¶¶ 17-21.) Bally's emphasizes in its brief that Plaintiff "did not experience any adverse employment action after any of these requests." (Id. at ¶ 5.)

Defendant never directly addresses Plaintiff's interference claim under the FMLA in the briefs submitted to this Court. Instead, the casino's argument appears to be that Plaintiff was not entitled to the FMLA protection because she did not take the leave for an intended purpose of the Act. (See Def.'s Br. at 10.) Defendant asserts that it wasn't the intermittent FMLA leave itself that prompted Plaintiff's termination - noting that previous FMLA-designated leave passed without incident - but the

10

"reasonable and legitimate belief by Defendant that Plaintiff had been dishonest in her claim that she was too ill to continue working on July 6, 2005."  (Id.)

This Court shall deny summary judgment because there are genuine questions of material fact as to Plaintiff's intended purpose for taking the leave.  Defendant has the burden in this motion of establishing as a matter of law that Plaintiff did not utilize her leave for a FMLA-related purpose.  According to Department of Labor regulations, Defendant must demonstrate that her position would have been terminated even if she had not taken FMLA leave.  See 29 C.F.R. § 825.216(a)(1) ("[A]n employer would have the burden of proving that an employee would have been laid off during the FMLA leave period and, therefore, would not be entitled to restoration").  Here, Defendant cannot meet that burden.  Plaintiff's decision to leave her shift early is inextricably tied to the question of whether she was suffering from chest pains and therefore utilizing her FMLA leave for an intended purpose of the Act.

Viewing the facts in a light most favorable to the Plaintiff, a reasonable factfinder could conclude that she was suffering from chest pains when she departed her Bally's shift early on July 5, 2006.  There is ample evidence that Plaintiff suffered from a chronic heart condition that occasionally caused severe pain, and Defendant does not dispute that this condition

11

was the sole reason Plaintiff applied for FMLA leave that they later approved. (See Def.'s Statement of Mat. Facts § 5; Pl.'s Ex. E, Pl.'s Medical Records.)  Whether, as Plaintiff claims, her condition improved within two hours through medication and an hour's nap, thus rendering her well enough to report to work at the Borgata, remains a disputed issue of fact for the jury. Because a factfinder could determine Plaintiff utilized her leave for the very FMLA-approved purpose she alleged, summary judgment is not appropriate for Plaintiff's interference claim.

### 2. **Plaintiff's Retaliation Claim**

Plaintiff's second theory of recovery under the FMLA is known as the retaliation, or discrimination, theory.  A retaliation claim arises from the FMLA's protection of employees who have exercised their rights under the statute. Hodgens, 144 F.3d at 159.  It is based on the idea that the substantive rights established by the FMLA prevent an employer from discriminating against employees and prospective employees who have taken FMLA leave.  29 U.S.C. § 2615(a)(2); 29 C.F.R. § 825.220(c).

The issues in a retaliation claim are similar to those raised in cases alleging other types of employment discrimination. Hodgens, 144 F.3d at 160.  The employer's motive is relevant, and the employer can defend its action as one based on a legitimate nondiscriminatory reason.  Id.  In cases under the retaliation theory, therefore, courts generally apply the

12

burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 800-06 (1973), which is used in discrimination cases brought under Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, and the American with Disabilities Act.  See Gventer v. Theraphysics Partners of Western Pa., Inc., 41 Fed. Appx. 552, 553 (3d Cir. 2002) (considering FMLA retaliation case where district court applied McDonnell Douglas approach); Dilenno v. Goodwill Indus. of Mid-Eastern Pa., No. 96-8053, 1997 U.S. Dist. LEXIS 19786 (E.D. Pa. Dec. 12, 1997), rev'd on other grounds, 162 F.3d 235 (3rd Cir. 1998) (applying McDonnell Douglas approach).

The McDonnell Douglas burden-shifting analysis for a retaliation claim involves three steps.  McDonnell Douglas, 411 U.S. at 802-04.  First, the plaintiff must present sufficient evidence to establish a prima facie case of retaliation.  Id.; see also Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981).  To do so, the plaintiff must show: (1) she availed herself of a protected right under the FMLA; (2) she was adversely affected by an employment decision; and (3) there is a causal connection between the employee's protected activity and the employer's adverse employment action.  Hogdens, 144 F.3d at 161.  By presenting proof of a prima facie case, the plaintiff creates a rebuttable presumption that the employer unlawfully discriminated against her.

13

Once the plaintiff has proved a prima facie case, the burden shifts to the employer "to articulate some legitimate, nondiscriminatory reason for the employee's [termination]." U.S. Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 714 (1983); McDonnell Douglas, 411 U.S. at 802.  The employer "must clearly set forth, through the introduction of admissible evidence, the reasons for the [employee's termination]" which show that the "plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason.'" Aikens, 460 U.S. at 714 (quoting Burdine, 450 U.S. at 254-55).  Finally, if the employer's evidence creates a genuine issue of fact, then the presumption of discrimination "drops from the case" and the burden shifts back to the plaintiff, who must then show that the employer's stated reason was in fact a pretext for retaliating against her because she took protected FMLA leave.  Aikens, 460 U.S. at 715.

In this case, Plaintiff has established a prima facie case, the first step in a McDonnell Douglas analysis.  Defendant concedes Plaintiff has met the first two elements for a prima facie case - that she availed herself of a protected right under the FMLA and she was adversely affected by an employment decision.  (Def.'s Br. at 7.)  Yet Defendant asserts Plaintiff can not prove the third element of a prima facie case, which is a causal connection between her FMLA leave and her termination.

(Id. at 8.)  Defendant's argument fails.  Plaintiff was suspended from her post on July 9, only three days after she took FMLA leave on July 6, and terminated on July 11, 2005.  (Def.'s Statement of Mat. Facts ¶¶ 31-32.)  Proximity in time between the exercise of protected rights and the offending action is considered "unduly suggestive" and may satisfy the causation element of plaintiff's prima facie case at the summary judgment stage.  See Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279-280 (3d Cir. 2000) (citing Jalil v. Avdel Corp., 873 F.2d 701, 708 (3d Cir. 1989)).  The Third Circuit has held that a plaintiff satisfied the causation element in a summary judgment motion when the "discharge followed rapidly, only two days" after plaintiff had exercised protected rights.  Parker, 234 F. Supp. at 492 (quoting Jalil, 873 F.2d at 708).  The Third Circuit has recently reiterated that, "[i]n certain narrow circumstances, an 'unusually suggestive' proximity in time between the protected activity and the adverse action may be sufficient, on its own, to establish the requisite causal connection."  Marra v. Philadelphia Housing Authority, No. 06-1140, slip op. at 30, 2007 WL 2215603 at * 10 (3d Cir. Aug. 2, 2007) (quoting Robinson v. City of Pittsburgh, 120 F.3d 1286, 1302 (3d Cir. 1997)).  The three-day window between Plaintiff's leave and her suspension, followed two days later by her termination, qualifies as "unduly

15

suggestive," and therefore satisfies the causation element of Plaintiff's prima facie case at the summary judgment level.

Defendant has countered Plaintiff's prima facie case by asserting a legitimate reason for their decision to eliminate Plaintiff's position, the second prong of a <u>McDonnell Douglas</u> analysis.  Defendant presented evidence that Plaintiff was "seen dealing blackjack without any obvious illness, infirmity or impairment" at a rival casino just two hours after she left Bally's, leading Defendant to conclude she had been dishonest about her claim of chest pains.  (Def.'s Br. at 4; Def.'s Ex. J, Affidavit of Michael May.)  Such dishonesty, they allege, constitutes fraudulent use of Plaintiff's FMLA leave and qualifies as a legitimate, nondiscriminatory business reason for the casino to fire her.  (Def.'s Br. at 10.)

This Court will deny Defendant's motion for summary judgment because there is a genuine issue of material fact as to whether Plaintiff was dishonest in her use of FMLA leave on July 5, 2006. Defendant fails to submit evidence that directly refutes Plaintiff's claim she was suffering from chest pains during her Bally's shift, the key element in determining whether Plaintiff's FMLA leave was fraudulent.  Indeed, Michael May's eyewitness report that Plaintiff was working at the Borgata at 8 p.m. may be suggestive but not definitive about the state of Plaintiff's health two hours earlier when she took the leave.  (<u>See</u> Def.'s

16

Ex. J, Affidavit of Michael May.)  Defendant alleges Plaintiff's argument that she was too ill to continue working "was clearly false based on the observation of Plaintiff dealing blackjack." (Def.'s Br. at 9.)  May is not a medical professional, did not speak or interact with Plaintiff, and his affidavit is devoid of details.  Defendant has, however, articulated a non-discriminatory reason - abuse of sick leave - for terminating Plaintiff's employment.

Because Defendant has articulated a legitimate, non-discriminatory reason for Plaintiff's termination, this Court must consider the third prong of a McDonnell Douglas analysis.  This third level of analysis weighs whether the Plaintiff can demonstrate that the employer's legitimate reason for termination is a mere pretext for actual retaliation.  For Defendant to obtain summary judgment at this stage, Bally's would be required to show that Plaintiff could not raise an issue of fact that might show that the casino's explanation was pretextual.  See Jalil, 873 F.2d at 708.  Defendant asserts that Plaintiff's only evidence for this prong is her personal belief that the casino's action was discriminatory.  (Def.'s Br. at 11.)  Defendant again ignores the key issue of material fact as to whether Plaintiff was ill, and therefore using her FMLA leave for a purpose of the Act, at the time she took the leave.

17

A reasonable factfinder could conclude Plaintiff utilized her FMLA leave for appropriate reasons, and that Defendant's termination of her employment therefore constitutes discrimination. Plaintiff argues the two-hour break between her two shifts was enough time to take both her heart medication and a nap. (Def.'s Statement of Mat. Facts ¶¶ 26-28.) She submitted medical records evidence documenting a relapse later that same evening that resulted in a visit to the emergency room with complaints of chest pain. (Pl.'s Ex. E, Pl.'s Medical Records.) Because a factfinder could reasonably conclude, giving Plaintiff all favorable inferences from the facts, that Plaintiff was not fit to continue working when she obtained her FMLA leave, and perhaps that she was still not medically fit to work when she nonetheless reported to her Borgata job before experiencing debilitating pain later that evening, Defendant's motion for summary judgment as to Plaintiff's retaliation claim fails.

### B. Claims Under The NJLAD (Count II)

Defendant also seeks summary judgment as to Plaintiff's claim for wrongful discharge under the NJLAD. The NJLAD was enacted with the express purpose of protecting civil rights, particularly in the area of employment discrimination, where the NJLAD declares that the opportunity to gain employment without fear of discrimination is a civil right. See Viscik v. Fowler

Equip. Co., Inc., 173 N.J. 1, 16 (2002) (citations omitted). The NJLAD protects both physical and non-physical disabilities. See N.J. Stat. Ann. 10:5-5(q)(2003). An individual is non-physically disabled if he has (or is perceived to have) "any mental, psychological or developmental disability resulting from...psychological, physiological or neurological conditions which prevents the normal exercise of any bodily or mental functions or is demonstrable, medically or psychologically, by accepted clinical or laboratory diagnostic techniques." Id.

In analyzing claims under the NJLAD, the New Jersey Supreme Court has adopted the analysis outlined by the U.S. Supreme Court in McDonnell Douglas. See Andersen v. Exxon Co., U.S.A., 89 N.J. 483 (1982). Under this burden-shifting analysis, as discussed in Section III, A.2 supra, if a plaintiff succeeds in making out a prima facie case, the burden shifts to the defendant to articulate some legitimate, non-discriminatory reason for the action at issue. See Anderson, 89 N.J. at 492. If the defendant succeeds in articulating a legitimate, non-discriminatory reason for the employment action, the plaintiff bears the burden of negating defendant's showing by demonstrating that the proffered reason is a pretext for unlawful discrimination. See id.

Since the Court employs the same analysis under the NJLAD as is did for the retaliation claim under the FMLA, Defendant's motion for summary judgment fails for identical reasons.

19

Defendant asserts that Plaintiff's use of her FMLA leave was fraudulent, and that constitutes a legitimate business reason for terminating her employment.  (Def.'s Br. at 10.)  Yet as discussed supra, Defendant's non-discriminatory reason for termination is subject to rebuttal by Plaintiff, who may be able to persuade a jury that the reason offered by Defendant is pretextual and that the true reason for this adverse action was unlawful discrimination based on Plaintiff's physiological condition; thus, Plaintiff's claim under the NJLAD, like Plaintiff's FMLA retaliation claim, survives Defendant's motion for summary judgment.

## IV. CONCLUSION

Because genuine questions of material fact exist about whether Plaintiff's use of FMLA leave was legitimate or fraudulent, and thus whether Defendant violated Plaintiff's rights under the NJLAD or either theory of recovery under the FMLA, this Court will deny Defendant's motion for summary judgment as to Counts I and II of the Complaint.  An appropriate Order will be entered.

**August 7, 2007**           **s/ Jerome B. Simandle**
DATE           JEROME B. SIMANDLE
         United States District Judge